## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

SHANNON COPELAND,

      Petitioner,

v.                              Case No.  4:18-cv-173-RH-MJF

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Shannon Copeland has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 19). Copeland replied. (Doc. 23). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Copeland is not entitled to habeas relief.[1]

_____

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background and Procedural History

In May 2007, Copeland was arrested in Liberty County, Florida, for resisting arrest with violence (Count 1) and battery on a law enforcement officer by throwing fluids (Count 2). (Doc. 19, Attach. 1, Ex. A (arrest report and probable cause affidavit)).[2] The State filed an information charging Copeland in Liberty County Circuit Court Case No. 2007-CF-60, with resisting arrest with violence. (Attach. 1, Ex. C at 181 (information)). The State declined to pursue the battery charge.

On September 5, 2007, Copeland entered an open plea of "no contest" to the resisting arrest charge. (Attach. 1, Ex. B at 56-71 (plea and sentencing transcript); Attach. 1, Ex. C at 204-05 (written plea and acknowledgement of rights)). The trial court accepted Copeland's plea, adjudicated her guilty of resisting arrest with violence, and sentenced her to 113 days in the county jail with credit for 113 days of time served, and a 3-year term of probation with the special conditions that she: (1) have no contact with Michael McGhee; (2) not go to Martin County except to answer outstanding warrants/charges in that county; and (3) comply with recommendations for treatment of her medical condition, including taking her medications. (Attach. 1,

---

[2] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 19). The citation refers to the electronic attachment number followed by the exhibit letter. When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom left corner of the page.

Ex. B at 56-71 (plea and sentencing transcript); Attach. 2, Ex. G (judgment and order of probation)). Copeland did not move to withdraw her plea, did not directly appeal the 2007 judgment and sentence, and did not seek collateral review of her conviction.

On January 1, 2009, Copeland was released from the Florida Department of Corrections after serving the incarceration portion of a sentence imposed by the Martin County Circuit Court in Case No. 2006-CF-1858. (Attach. 1, Ex. B at 13-21 (violation report with addenda and supporting affidavits); *see also* Exs. M-N (Martin County documents)). That same day, Copeland's probation officer directed her to report to the probation office in Quincy, Florida, on January 5, 2009. (*Id.*). On January 6, 2009, the State filed a probation violation report alleging that Copeland violated her probation by failing to report as directed by the probation officer. (Attach. B at 13-15). An additional VOP charge was added on January 12, 2009, alleging that Copeland changed her residence without procuring the consent of her probation officer. (Attach. 1, Ex. B at 17-21).

Copeland was arrested on the VOP charges on July 2, 2009. (Attach. 1, Ex. B at 22-23). Copeland was appointed counsel, and a VOP hearing was scheduled for September 1, 2009. (Attach. 1, Ex. B at 7-8 (docket sheet), Ex. B at 24 (order appointing counsel)). The VOP hearing was continued several times while Copeland

resolved pending VOCC charges for violating her community control in Martin County Case No. 2006-CF-1858. (Attach. 1, Ex. B at 8, 25).

On May 3, 2010, the court in Liberty County was notified that Copeland was sentenced to prison on the Martin County VOCC charges. (Attach. 1, Ex. B at 8 (docket sheet); *see also* Attach. 4, Exs. N, O (Martin County VOCC judgments (original and resentencing)). The Liberty County court scheduled a VOP hearing for July 7, 2010. (*Id*.). At the July 7, 2010, hearing, the court removed the case from the docket and lodged a detainer against Copeland to secure her presence for disposition of the VOP charges once she was released from prison. (*See* Attach. 1, Ex. B at 8 (docket sheet)).

On July 14, 2013, Copeland filed a *pro se* "Motion for Relief" in her Liberty County case requesting "final disposition" of the VOP charges. (Attach. 1, Ex. B at 29-30). On August 20, 2013, the court appointed counsel to represent Copeland and set the matter for a case management conference. (Attach. 1, Ex. B at 31).

In the meantime, on August 14, 2013, Copeland filed a *pro se* state habeas petition in the Liberty County Circuit Court. (Attach. 2-3, Ex. H). The court opened a new case file and assigned Case No. 2013-CA-169. (Attach. 2, Ex. H at 1). On December 5, 2013, the state court construed Copeland's petition as seeking relief from the detainer lodged against her in her criminal case (Case No. 2007-CF-60).

(Attach. 3, Ex. K at 1). The state habeas court took judicial notice of the fact that the State was "now actively prosecuting Petitioner on the charges in Case 07CF60," and that the docket in that case "also reflects that on July 30, 2013, Petitioner filed a Motion for Relief seeking similar relief, disposition of the probation violation charges." (Attach. 3, Ex. K at 1-2). The court concluded that Copeland's petition was "mooted by the prosecution of the charges," and ordered that the habeas case be closed. (*Id*. at 2). Copeland filed a notice of appeal from that order. (Attach. 3, Ex. L at 1). On January 7, 2014, the Florida First District Court of Appeal ("First DCA") ordered Copeland to file a copy of the order being appealed. (Attach. 3, Ex. L at 2). On April 4, 2014, after Copeland failed to comply, the First DCA dismissed the appeal for Copeland's failure to comply with that court's orders and her failure to file a copy of the order being appealed. (Attach. 3, Ex. L at  5).

On September 12, 2016, the Liberty County Circuit Court held a VOP hearing where Copeland entered a counseled, open admission to the VOP charges. (Attach. 1, Ex. B at 103-04 (plea/admission to VOP charges and acknowledgement of rights), Ex. B at 148-65 (VOP hearing transcript)). After a colloquy, the trial court determined that Copeland's admission to the violations was intelligently and voluntarily made, accepted Copeland's admission, adjudicated her guilty of violating her probation, revoked her probation, and sentenced her to 24 months of

imprisonment to run consecutive to her Martin County sentence. (Attach. 1, Ex. B at 105-113 (VOP judgment); *see also* Ex. B at 116 (order revoking probation)).

On September 13, 2016, Copeland filed a counseled motion to correct sentence under Florida Rule of Criminal Procedure 3.800(a), seeking jail credit of 4 months and 4 days on her VOP sentence. (Attach. 1, Ex. B at 99-102). On October 6, 2016, Copeland, on her own behalf, filed a "Motion to Withdraw Plea," in which she sought to withdraw her admission to the probation violations on the grounds that (1) she was promised her VOP sentence would not involve "consecutive time," (2) she was not guilty of the violations or of the original crime of resisting arrest with violence, and (3) her VOP sentence was excessive. (Attach. 1, Ex. B at 133-34). Copeland also filed, on her own behalf, a notice of appeal from the VOP judgment and sentence. (Attach. 1, Ex. B at 142).

On December 9, 2016, the court held a hearing on Copeland's Rule 3.800 motion and awarded her the additional jail credit. (Attach. 1, Ex. C at 206 (order); *see also* Ex. C at 207-12 (motion hearing transcript)). The court denied Copeland's motion to withdraw her plea due to her having filed a notice of appeal. (Attach. 1, Ex. C at 210-11).

Copeland pursued her VOP appeal with the assistance of counsel. (Attach. 7, Ex. AA, (initial brief), Ex. CC (reply brief)). On November 29, 2017, the First DCA

affirmed the VOP judgment and sentence *per curiam* without written opinion. *Copeland v. State*, 237 So. 3d 940 (Fla. 1st DCA 2017) (Table) (copy at Attach. 7, Ex. DD).

Copeland filed her federal habeas petition on March 6, 2018, raising four claims. (Doc. 1). The State asserts that each claim fails for one or more of the following reasons: (1) the allegations do not state a discernible basis for habeas relief; (2) the claim is unexhausted and procedurally defaulted; (3) Copeland fails to meet § 2254(d)'s demanding standard; and (4) the claim is refuted by the record and therefore fails on *de novo* review. (Doc. 19).

## II.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

---

The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III. Discussion

### Ground One          "Sentenced as incompetent without being adjudicated competent." (Doc. 1 at 5 in ECF).

This claim involves Copeland's September 5, 2007, plea and conviction for resisting arrest with violence. Copeland alleges:

> I was sent to the state hospital after a psychologist lied and said I told her I could not stand the sight of the lawyer I had never met. No one adjudicated me competent and I was sentenced after being found insane/incompetent.

(Doc. 1 at 5 in ECF). The following procedural history provides context for this claim.

After the sworn complaint was filed on May 17, 2007, alleging that Copeland resisted an officer with violence and battered a law enforcement officer, Copeland's defense counsel referred her for a competency evaluation. Dr. Gregory Prichard evaluated Copeland on May 23, 2007, and concluded, in a report dated June 1, 2007, that Copeland was competent to proceed. (Attach. 2, Ex. H at 47-54 in ECF). The

State Attorney's Office referred Copeland for a competency evaluation on June 7, 2007. Dr. Celeste Shuler evaluated Copeland and concluded, in a report dated June 8, 2007, that Copeland was not competent to proceed. (Attach. 2, Ex. H at 55-62 in ECF).

The parties appeared for Copeland's arraignment on June 8, 2007. (Attach. 1, Ex. B at 6 (copy of docket); Attach. 1, Ex. C at 213-16 (transcript of proceeding)). The prosecutor informed the court:

> MR. COMBS [Prosecutor]:  Judge, the next item is Shannon Copeland. Judge, on Ms. Copeland, there has been some various evaluations of Ms. Copeland. One, I was provided a report by a Dr. Prichard, and then as of yesterday, Dr. Shuler examined her and gave us an oral report this morning that in her opinion Ms. Copeland has decompensated since the time Dr. Prichard looked at her and is of the opinion that she is incompetent at this point in time and qualifies for the criteria for involuntary commitment to the Florida State Hospital on competency issues.
>
> As I understood from what she said, she believes that Ms. Copeland probably would be found competent after some period of time in the hospital, with some treatment and medication. And I would—I'm willing to stipulate to that. She has not written the report yet. She just evaluated her last night, came up this morning and reported to us her findings. She is present in the courtroom, if the Court has any questions to ask of her. I would stipulate to that report that she is about to write that a sufficient basis, if the Court determines that you would find her incompetent and commit her to Florida State Hospital. We would have to waive her appearance because she is not currently—
>
> MR. CROWLEY [Defense Counsel]:  She's in the Gadsden County jail right now, which we do, we would waive it.

MR. COMBS:  Defense waives her appearance. I would stipulate to Dr. Shuler's conclusion at this time about competency. I'm not agreeing on the question of not guilty by reason of insanity. I filed a motion for further evaluation of Ms. Copeland, but if she is going to be found incompetent and sent to Florida State Hospital, I would hold that off until we get back that she is competent. No use proceeding on that evaluation until then.

THE COURT:  Well, if both of you stipulate and agree that she is incompetent to proceed—

MR. COMBS:  Yes, sir, at this point in time, based upon what the doctor told me, I would say that she is.

THE COURT:  The Court will enter an order then.

MR. CROWLEY:  And the defense will also, Your Honor. I just so happen to have an order.

THE COURT:  Okay.

MR. COMBS:  The written report will need to be done by Dr. Shuler before she can be taken. He can sign the order, but they can't take her to Florida State Hospital until they get the report from Dr. Shuler attached to it. As I understand it, and you know better than I do, they're a bunch of bean counters up there.

MR. CROWLEY:  They are.

MR. COMBS:  And if they don't have the report, they won't take her.

MR. CROWLEY:  If we try to send her without the written report, it will delay the whole thing.

THE COURT:  All right. Well, I'll enter the order, subject to receiving that written report attached to the order.

(Doc. 19, Attach. 1, Ex. C at 213-16). That day, June 8, 2007, the trial court entered an order adjudging Copeland incompetent to proceed based on the written report of Dr. Prichard and the parties' stipulation.[4] (Attach. 1, Ex. C at 177-80). The court found that Copeland met the criteria for involuntary commitment, and committed her to the Florida Department of Children and Families for treatment. (*Id*.). Copeland was admitted to Florida State Hospital on June 13, 2007. (Attach. 1, Ex. C at 184).

On August 13, 2007, the administrator of the Florida State Hospital ("FSH") filed a competency evaluation and report prepared by Dr. Leslie Dellenbarger. (Attach. 1, Ex. C at 182-90). The Dellenbarger report discussed Copeland's mental health history, her treatment since Copeland's admission to FSH, her rehabilitation progress, and her responses to questions during the competency assessment. Dr. Dellenbarger concluded that Copeland understood the legal charge against her, understood the penalties associated with that charge, understood the adversarial nature of the legal process, could disclose relevant facts to her attorney, could conduct herself appropriately in a courtroom, and could provide relevant testimony. (Attach. 1, Ex. C at 187-90). Dr. Dellenbarger opined that Copeland was competent

---

[4] Dr. Shuler's report was not filed with the court until June 11, 2007. (Attach. 2, Ex. H at 55 in ECF).

to proceed in her criminal case and no longer met the criteria for continued involuntary commitment.

On August 14, 2007, the trial court entered an order notifying the parties of the Dellenbarger report and setting a hearing to address Copeland's competence. (Attach. 2, Ex. F). A hearing was held on September 5, 2007, at which Copeland was present with counsel. (Attach. 1, Ex. B at 56-71). At the outset of the hearing, defense counsel announced:

> MR. CROWLEY [Defense Counsel]:  Your Honor, this is Ms. Shannon Copeland, 07-060. She was found incompetent to proceed a few months ago. The hospital sent a report finding her competent to proceed. We stipulate to that.
>
> MR. COMBS [Prosecutor]:  And, Judge, I would stipulate to the report. I've reviewed it from the hospital that she is now competent to stand trial.
>
> MR. CROWLEY:  And we would  like at this point Your Honor, to withdraw the previously entered plea of not guilty and enter a plea of no contest to one count of resisting with violence. There is no agreement with the State as to a sentence at this time.

(Attach. 1, Ex. B at 58). Copeland was placed under oath, and the trial court asked her a series of questions:

> THE COURT:  Your lawyer has provided to the Court a written plea and acknowledgement of rights form. It appears to bear your signature. Is that your signature?
>
> THE DEFENDANT:  Yes, sir.

THE COURT:  Have you gone over this fully with your lawyer?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has he explained it to you in detail?

THE DEFENDANT:  Yes, sir.

THE COURT:  You read it yourself?

THE DEFENDANT:  Yes, sir.

THE COURT:  You can read and write? You understand it?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has anyone threatened you in any way, promised you anything coerced you to enter this plea?

THE DEFENDANT:  No, sir.

THE COURT:  Is your plea entered into freely and voluntarily?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you satisfied with the services rendered to you by your lawyer?

THE DEFENDANT:  Yes, sir.

THE COURT:  Is there a factual basis to support the charges, counsel?

MR. CROWLEY:  Yes, Your Honor[.]

THE COURT:  Do you understand that you've been charged with a third-degree felony of resisting arrest with violence?  Do you

Page 16 of 40

understand the maximum penalty that could be imposed to that is five years in the penitentiary?

THE DEFENDANT:  Yes, sir.

THE COURT:  There's no agreement with the State as to what the penalty will be imposed by the Court?

THE DEFENDANT:  Yes, sir.

THE COURT:  There is no agreement?

THE DEFENDANT:  Right.

THE COURT:  No one has promised you anything?

THE DEFENDANT:  Right.

THE COURT:  And you know you have a right to a trial by jury when you are charged with a crime?

THE DEFENDANT:  Right.

THE COURT:  But by entering this plea, you are waiving that right to a trial of any kind?

THE DEFENDANT:  Yes, sir.

THE COURT:  You waive your right to have a lawyer assist you in trial and confront witnesses against you and call witnesses on your own behalf?

THE DEFENDANT:  Yes, sir.

THE COURT:  And you waive your right to remain silent as to these charges?

THE DEFENDANT:  Yes, sir.

> THE COURT:  You understand all matters which are appealable at this point are waived by entering this plea?
>
> THE DEFENDANT:  Yes, sir.

(Attach. 1, Ex. B at 58-60). After confirming there was a factual basis for the plea, the trial court determined that Copeland's plea was "entered into freely, intelligently, and voluntarily," and accepted her no contest plea. (*Id*. at 61). Before sentencing her, the court heard arguments from the prosecutor and defense counsel concerning an appropriate sentence. The court addressed Copeland personally:

> THE COURT:  I was reading the probable cause while y'all were talking, and it indicated that you weren't being too good about taking your medication.
>
> THE DEFENDANT:  I was taking my medication. That was a misunderstanding that they had or someone had that I wasn't taking my medication, but I was. And I was seeing a doctor on a regular basis, a psychiatric nurse, and a licensed clinical social worker, so.
>
> THE COURT:  Well. Something caused you to act the way you did based on what—
>
> THE DEFENDANT:  I was very frightened. I thought—I didn't realize there were warrants out for me. My dad had called the police because he was upset with me over a minor thing. And the police showed up, and it frightened me. And I just left. And then it was after that that I understand that they found out there were warrants for me. They didn't come to the house to pick me up for warrants. My dad had called and told them that I was mentally ill and wasn't taking my medicine because he was upset with me. So, I didn't understand that there were warrants out for me. And when they put me in the holding cell, they pepper sprayed me and tased me with a taser gun. Then they

started giving me water to put on my eyes, and then they stopped giving me water. And then I started scooping it up off the floor to put on my eyes. And that's when they said that I was expelling fluids at them. And that is not true.

THE COURT:  The Court will adjudicate you guilty of this offense of resisting with violence. The Court will place you on probation for a period of three years. Special conditions of probation will be that you don't go back down to Martin County, have no contact with this person.

MR. CROWLEY:  She has to go back down there.

THE COURT:  Well, except to answer for those offenses, but have no contact with the person that you, apparently, have been stalking. Do you have a name, Mr.—

. . . .

PROBATION OFFICER:  Your Honor, his name is Michael McGee.

. . . .

THE COURT:  Special condition of probation will be that you comply fully with recommendations for your treatment, taking medication for your mental health condition. It will be standard court costs and fines. Be sentenced to 113 days in county jail as condition of probation. You'll be given credit for 113 days time served. You have a right to appeal. If you desire to do so, you need to file a notice of appeal within 30 days. If you cannot afford a lawyer, the Court will appoint one for you at the public's expense.

(Attach. 1, Ex. B at 68-70; *see also* Attach. 2, Ex. G (judgment)).

Copeland did not appeal the September 5, 2007, judgment. Later, however, in her appeal of the 2016 VOP judgment, she raised this issue: "[T]he trial court erred

as a matter of law and violated Ms. Copeland's due process rights by failing to make a judicial determination of Ms. Copeland's competence to proceed prior to accepting her plea where Ms. Copeland had previously been adjudged incompetent to proceed by the court." (Attach. 7, Ex. AA, Issue I). Copeland's appellate brief framed the issue as a purely legal one. (*Id*. at 13-14). Copeland asserted that because she was adjudged incompetent to proceed on June 8, 2007, Florida law required that the trial court conduct a competency hearing and enter a written order finding her competent to proceed, before proceeding with her plea and sentencing. (*Id*. at 13-18). Copeland maintained that "the trial court never heard evidence, never held a hearing, never addressed the matter in any way, and never made any finding" that she was competent. (*Id*. at 16). Copeland concluded that "[t]he trial court's failure to make the required independent determination regarding Ms. Copeland's competency to stand trial, led to the State's proceeding against an incompetent defendant, which is prohibited." (*Id*. at 16 (citing *Dougherty v. State*, 149 So. 3d 672, 678 (Fla. 2014); *Barnes v. State*, 124 So. 3d 904, 915 (Fla. 2013); *Zern v. State*, 191 So. 3d 962, 965 (Fla. 1st DCA 2016))).

The First DCA summarily affirmed without explanation. (Attach. 7, Ex. DD). This court liberally construes Copeland's present claim as raising the same claim she presented to the First DCA. (Doc. 1 at 5). To clarify, Copeland does not allege,

nor did she in the First DCA, that she was not in fact mentally competent to proceed when she pleaded no contest (*i.e.*, that she did not have a "sufficient present ability to consult with h[er] lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against h[er]." *Godinez v. Moran*, 509 U.S. 389, 396 (1993)). Her allegation is that the trial court's failure to follow Florida's statutory procedures requiring an adjudication of competence deprived her of a fair proceeding. (Doc. 19, Attach. 7, Ex. AA at 14-16 (citing Florida caselaw)). The State asserts that Copeland is not entitled to habeas relief because she fails to meet § 2254(d)'s demanding standard. (Doc. 19 at 22-30).

### A.    Clearly Established Federal Law

The "conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (citing *Bishop v. United States*, 350 U.S. 961 (1956)). A defendant is incompetent if she lacks "sufficient present ability to consult with h[er] lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against h[er]." *Godinez*, 509 U.S. at 396 (internal quotation marks omitted) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). The constitutional competency standard for entering a guilty plea is the same as the competency standard for standing trial. *Godinez*, 509 U.S. at 396.

When evidence raises a "bona fide doubt" of a defendant's competence to proceed, due process requires that a court hold an adequate hearing regarding competency. *Pate*, 383 U.S. at 385 (holding that when the evidence "raises a bona fide doubt as to a defendant's competence to stand trial, the judge on his own motion must . . . conduct a [competency hearing].") (quotation marks omitted); *Drope v. Missouri*, 420 U.S. 162, 180 (1975) (holding that when the evidence "create[s] sufficient doubt" about the defendant's competence to stand trial, a competency hearing is constitutionally required); *see also Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) ("To prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts raising a bona fide doubt regarding the petitioner's competency to stand trial.").

A procedural competency claim (*i.e.*, a *Pate* claim) necessarily is confined to information presented to the trial court. *See Pate*, 383 U.S. at 378 (analyzing a procedural competency claim by reviewing the conduct of the trial and the evidence touching on the question of the defendant's competence at that time); *Drope*, 420 U.S. at 180 (same); *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987) (holding that a *Pate* analysis focuses on "what the trial court did in light of what it then knew, [and] whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency"); *see also Medina*, 59 F.3d

at 1106 (noting that a *Pate* claim "can and must be raised on direct appeal because an appellate court hearing the claim *may consider only the information before the trial court before and during trial*." (emphasis added)).

> In assessing this information, the Supreme Court in *Drope* elaborated:

> The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180.

### B.    Section 2254 Review of State Court's Decision

The First DCA's summary decision is an "adjudication on the merits" of Copeland's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *id*. at 100 ("This Court now holds and reconfirms that

§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*. According to *Richter*, "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

Florida's statutory procedure protects a criminal defendant's right not to be tried while incompetent.[5] Florida Rule 3.210 provides: "A person accused of an offense . . . who is mentally incompetent to proceed at any material stage of a criminal proceeding shall not be proceeded against while incompetent." Fla. R. Crim. P. 3.210(a) (2007). When a criminal defendant is found incompetent to

---

[5] Copeland does not challenge the constitutional adequacy of Florida's statutory procedure.

proceed and committed for treatment, the treatment facility must file a status report no later than 6 months from the date of admission. Fla. R. Crim. P. 3.212(c)(5) (2007). If at any time during that six-month period the administrator of the facility "determines that the defendant no longer meets the criteria for commitment or has become competent to proceed, the administrator shall notify the court by such a report, with copies to all parties." Fla. R. Crim. P. 3.212(c)(5) (2007). The court must hold a hearing within 30 days of its receipt of the report. Fla. R. Crim. P. 3.212(c)(6) (2007). At such hearing, "[t]he experts preparing the reports may be called by either party or the court, and additional evidence may be introduced by either party." Fla. R. Crim. P. 3.212(a) (2007). If the court decides, after hearing, that the defendant is competent to proceed, it "shall enter its order so finding and shall proceed." Fla. R. Crim. P. 3.212(c)(7) (2007). If, after such hearing, the court determines that the defendant remains incompetent to proceed but no longer meets the criteria for commitment, the defendant may be released on appropriate release conditions for a period not to exceed one year. Fla. R. Crim. P. 3.212(c)(8) (2007).

In *Dougherty*, *supra*, the Florida Supreme Court recognized that, generally, a proper competency hearing involves the calling of court-appointed experts. 149 So. 3d at 677. The court, however, also recognized that "[t]he plain language of rule 3.212(a) . . . does not require the calling of expert witnesses or any additional

witnesses because the word 'may' is used. Further, 'where the parties and the judge agree, the trial court may decide the issue of competency on the basis of the written reports alone.'" *Id*. at 677-78 (emphasis added) (quoting *Fowler v. State*, 255 So.2d 513, 515 (Fla. 1971)).

Copeland's competence to proceed was addressed at the September 5, 2007, hearing. The parties do not dispute the accuracy of the evidence relevant to Copeland's mental condition that was before the trial court at that time. The trial court possessed the following evidence:

(1) the June 8, 2007, Shuler report and court adjudication that Copeland was incompetent to proceed;

(2) the August 7, 2007, Dellenbarger report finding Copeland competent to proceed;

(3) the parties' September 5, 2007, stipulation to Copeland's competence to proceed, and the parties' joint stipulation to the issue of Copeland's competence being determined on the basis of the Dellenbarger report alone;

(4) Copeland's behavior and demeanor at the September 5, 2007, hearing;

(5) Copeland's answers to the trial court's questions at the September 5, 2007, hearing concerning her ability to consult with her attorney about her case and her satisfaction with counsel's representation; and

(6) Copeland's answers to the trial court's questions at the September 5, 2007, hearing confirming (i) her understanding of the nature of the criminal charge and the maximum possible penalty, (ii) her understanding of the plea process, including the consequences of entering a no contest plea, (iii) her understanding of the constitutional rights she was waiving by entering the plea, (iv) her understanding of the terms of the written plea and waiver of rights form she signed, (v) that she, personally, made the decision to plead no contest, and (vi) that she was entering her plea because she believed it was in her best interest and not because she was threatened or improperly induced.

Copeland does not identify any other evidence that was before the trial court on the issue of her competence. Copeland also does not dispute that the evidence before the court raised no doubt that as of September 5, 2007, she was able to consult with her lawyer with a reasonable degree of rational understanding and that she had a rational and factual understanding of the proceeding. Rather, Copeland claims that the trial court's failure to comply with Florida's statutory rule requiring entry of an order of competence deprived her of a fair proceeding.

Copeland has failed to show that the "contrary to" prong of the AEDPA standard has been satisfied. *See* 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court

of the United States" where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams*, 529 U.S. at 405-06. The Supreme Court has not addressed a claim precisely like Copeland's, nor has it ruled on a "materially indistinguishable" set of facts.

The remaining question is whether the First DCA unreasonably applied a holding of the Supreme Court of the United States when it rejected Copeland's due process claim. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks omitted). The Supreme Court often has reiterated that, in the absence of a clear answer—that is, a holding by the Supreme Court— about an issue of federal law, a federal habeas court cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal quotation marks omitted); *Schriro v. Landrigan*,

550 U.S. 465, 478 (2007) (holding that the Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the denial of relief by the California Court of Appeal "was not contrary to or an unreasonable application of clearly established federal law."). Copeland has not established "that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Because the First DCA's rejection of Copeland's due process claim was neither contrary to, nor an unreasonable application of, a holding of the United States Supreme Court, Copeland is not entitled to habeas relief on Ground One.

### **Ground Two       "Sentenced based on unsubstantiated allegation." (Doc. 1 at 7 in ECF).**

Copeland's next claim challenges her VOP sentence on this basis: "Judge said she was giving me a 2 year consecutive sentence because I went to Martin County. This was not true and there was no evidence presented to support this." (*Id*. at 7 in ECF). Copeland asserts that she raised this claim in her VOP appeal. (*Id*.). Copeland's counseled brief on appeal presented this issue: "Whether the trial court

violated Ms. Copeland's fundamental due process rights by specifically relying on unsubstantiated allegations of misconduct as the sole basis for imposing a consecutive sentence." (Attach. 7, Ex. AA at i, 18). Although Copeland couched her claim in terms of due process, she did not identify any federal law or United States Supreme Court precedent supporting her claim, nor does she here.

The First DCA summarily affirmed Copeland's VOP sentence without explanation. (*Id.*, Ex. DD). The First DCA's summary decision is an "adjudication on the merits" of Copeland's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. The State asserts that Copeland is not entitled to habeas relief because she fails to meet § 2254(d)'s demanding standard. (Doc. 19 at 30-36).

### A.    Clearly Established Federal Law

A sentence within legislatively mandated guidelines is presumptively valid. *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). If a sentence is within statutory limits, state courts have wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949). Federal habeas courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by

law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987)); *see also Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1998) ("[F]ederal courts cannot review a state's alleged failure to adhere to its own sentencing procedures.").

## B.   Section 2254 Review of State Court's Decision

Even assuming to Copeland's benefit (without deciding) that her sentencing claim is cognizable on federal habeas review, she is not entitled to relief. In Florida, the statutory maximum for resisting arrest with violence, a third degree felony, is five years of imprisonment. Fla. Stat. § 775.082(3)(e). Copeland's VOP sentence falls within that statutory limit.

Additionally, the sentencing transcript, read in its entirety, shows that Copeland was given a fair hearing at sentencing. After considering the attorneys' arguments and Copeland's own statements, the VOP court sentenced Copeland to 24 months of imprisonment consecutive to her Martin County sentence, explaining:

> THE COURT:  All right. Well, I think that's a fair disposition. So 24 months, I'm not going to give the credit if that's what it is. It's consecutive for totally disobeying the court order. Not just a violation of probation but, you know, a very edict. If in fact Judge Smith said, don't go and you just [bee-lined] down there any.

> THE DEFENDANT:  No, ma'am, that's where the misunderstanding was. I didn't violate it for going to Martin County. I haven't been to Martin County in ten years.

THE COURT:  Okay.

THE DEFENDANT:  See, I think a lot of things are being misunderstood, that are being misrepresented and you're taking that into consideration.

THE COURT:  All right. Well, I'm not going to do what Mr. Combs [Assistant State Attorney] wants but I think this is fair so—

(Attach. 1, Ex. B at 164-65).

The First DCA reasonably could have interpreted the trial court's final remarks as a conclusion that the 24-month consecutive sentence was fair even if Copeland did not go to Martin County. The sentence was less than the 5-year consecutive sentence sought by the prosecution, and it fell within the statutory limit.

Based on the foregoing, Copeland has not shown that the state court's rejection of her sentencing claim was inconsistent with any holding of the United States Supreme Court, or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Copeland is not entitled to habeas relief on Ground Two.

### **Ground Three      Untitled (Doc. 1 at 9 in ECF).**

Copeland does not identify the nature of her claim in Ground Three. She seeks habeas relief based on these facts:

Charge based on false report of police officer who lied to cover up abuse; he was about to voluntarily resign in 2015 after it was

discov[ered] he was stealing money from the community soft ball
program.

(*Id*.). Copeland asserts that she raised this claim in her state habeas petition filed in
2013. (*Id*. at 10 in ECF). The State asserts that Copeland's allegations present no
discernable basis for federal habeas relief, nor is any basis discernable from the
"meandering narrative" of her state habeas petition. (Doc. 19 at 39 (citing Attach. 2-
3, Ex. H)).

Copeland's state habeas petition is a 17-page narrative explaining Copeland's
version of the facts underlying her Liberty County and Martin County criminal
cases. (Attach. 2-3, Ex. H). Copeland appears to seek relief from her convictions
because she is actually innocent.

A freestanding claim of actual innocence is not cognizable on federal habeas
review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual
innocence . . . have never been held to state a ground for federal habeas relief absent
an independent constitutional violation occurring in the underlying state criminal
proceeding."); *Cunningham v. Dist. Attorney's Office for Escambia Cty*., 592 F.3d
1237, 1272 (11th Cir. 2010) ("[T]his Court's own precedent does not allow habeas
relief on a freestanding innocence claim in non-capital cases[.]"). This rule "is
grounded in the principle that federal habeas courts sit to ensure that individuals are
not imprisoned in violation of the Constitution—not to correct errors of fact."

*Herrera*, 506 U.S. at 400-01. Copeland's allegations in Ground Three provide no basis for federal habeas relief.

**Ground Four       "Plea not voluntary" (Doc. 1 at 11 in ECF).**

Copeland claims that her plea was involuntary for this reason: "overmedicated into a stupor from the doctor not properly prescribed." (Doc. 1 at 11 in ECF). Copeland states that she did not exhaust her state remedies on this claim because she "did not know this at the time," but she also states that she raised this issue in her 2013 state habeas petition. (*Id.*). The court construes this claim as a challenge to Copeland's 2007 no-contest plea to the resisting arrest charge.[6] The State asserts that this claim is procedurally defaulted and refuted by the record. (Doc. 19 at 41-43).

### A.    Federal Habeas Exhaustion Requirement

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging her conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To satisfy the exhaustion requirement, the petitioner must "fairly present" her federal claim to the state's highest court, either on direct appeal or on collateral review. *Castille v.*

---

[6] Copeland's Liberty County VOP charges were still pending in 2013.

*Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). A claim that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *Boerckel*, 526 U.S. at 839-40.

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).The *Schlup* standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

## B.    Application of the Exhaustion Standard

The State asserts that the only time Copeland alleged in state court that she was "overmedicated" was in a single sentence in her state habeas petition where she stated, in reference to her September 5, 2007, plea, that "[t]his plea was involuntary due to the overmedicated state I as [sic] in at the time." (Attach. 2, Ex. H at 15; *see also* Ex. H at 6 ("After being forced to take medication that was not properly prescribed according to the psychiatrist who evaluated my records, I was not in any state to make a decision about entering a plea.")). The State contends that this passing reference, in a pleading seeking a hearing on the VOP charges, did not fairly present

a claim that Copeland's 2007 plea was involuntary. Moreover, even assuming *arguendo* that the allegation fairly presented a constitutional challenge to her 2007 plea, Copeland procedurally defaulted the claim by abandoning her appeal from the circuit court's order ruling that the petition was moot. (Doc. 19 at 41-42). The State alternatively asserts that this claim fails on the merits on *de novo* review, because it is conclusively refuted by the record of Copeland's 2007 plea. (*Id*. at 42-43).

A review of the state court record confirms that this claim is procedurally defaulted for the reasons outlined in the State's answer. The only pleading in which Copeland mentioned being overmedicated was in her state habeas petition.[7] There, however, she did not present the allegation as a constitutional challenge to her 2007 no-contest plea, nor did the court construe it as such. *See Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004) (articulating the "fair presentation" requirement for habeas exhaustion). Further, even assuming to Copeland's benefit that she fairly presented her involuntary plea claim in her state habeas petition, she abandoned her appeal from the circuit court's ruling, rendering the claim unexhausted and procedurally defaulted on habeas review. *Boerckel*, 526 U.S. at

---

[7] Copeland's appeal from the VOP judgment did not claim that the 2007 plea was involuntary because Copeland was overmedicated. (*See* Attach. 7, Ex. AA).

Page 37 of 40

845. Copeland makes none of the requisite showings to excuse her procedural default. Copeland's procedural default bars federal habeas review of Ground Four.

## IV. Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue

when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Shannon Copeland*, Liberty County Circuit Court Case No. 2007-CF-60, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case file.

At Panama City, Florida, this <u>23rd</u> day of March, 2020.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**